Ervin E. JOHNSON and Catherine L. Johnson

v.

**FOUR STATES ENTERPRISES, INC., et al.**

Civ. A. No. 70-1472.

United States District Court, E. D. Pennsylvania.

Dec. 13, 1972.

Arnold E. Rubin, Media, Pa., for plaintiffs.

John M. Gallagher, Jr., Upper Darby, Pa., for defendants.

## MEMORANDUM AND ORDER

NEWCOMER, District Judge.

The above captioned defendants have filed a motion to dismiss the complaint because of lack of diversity. The plaintiffs filed a pro se complaint on June 3, 1970. Service was attempted upon Four States Enterprises, Inc. on June 3, 1970 at 401 Noble Street, Philadelphia, Pennsylvania. Service was unsuccessful and the United States Marshall was informed successful service might be completed at 3200 Richmond Street, Philadelphia, Pennsylvania, under the name Regency Builders. Service was again attempted upon Four States Enterprises, Inc. at 3200 Richmond Street, Philadelphia, Pennsylvania, on July 10, 1970, and was again unsuccessful.

On February 17, 1971, the plaintiffs filed a Praecipe for an Alias Summons upon Four States Enterprises, Inc. at 1326 Disston Street, Philadelphia, Pennsylvania. Also on February 17, 1971, a pro se amended complaint was filed. A motion to dismiss was filed by defendants Scolnick and Myers on May 27, 1971, service having been completed as to Scolnick on May 8, 1971 by personal service on him at 1846 Strahle Street, Philadelphia, Pennsylvania. Service was completed as to Myers on May 8, 1971, by service upon Scolnick, in view of the fact that Myers lived at 1844 Strahle Street, Philadelphia, Pennsylvania, and Scolnick was his next door neighbor. On June 15, 1971, The Honorable Edward R. Becker denied the motion to dismiss.

Service was completed on July 12, 1971 as to Four States Enterprises, Inc., by serving the registered agent, James Gilbert Brown at 1326 Disston Street, Philadelphia, Pennsylvania. Unfortunately, James Gilbert Brown was the New Jersey registered agent for Four States Enterprises, Inc. and not the Pennsylvania registered agent, the corporation being a New Jersey corporation with registered offices located at 716 Federal Street, Camden, New Jersey. Compounding plaintiffs' misfortune was the fact that by that date, July 12, 1971, the State of New Jersey had, on February 8, 1971, voided the corporate charter of Four States Enterprises, Inc. for failure to pay the $25.00 franchise tax due December 31, 1967.

On August 2, 1971, plaintiffs retained an attorney and a second amended complaint was filed alleging breach of a construction contract, property damage because of said breach, and injury to plaintiffs' financial credit rating because of a law suit that ensued after the breach and because of the breach, wherein plaintiffs here were named defendants there.

A brief history of this case and some background information will be helpful at this point. The play and players are as follows. Regency Builders, Inc. is a corporation incorporated under the laws of Pennsylvania for the purpose of home repair contracting. It is licensed to do business in the State of New Jersey with its principal place of business in that state at 15 South Haddon Avenue, Haddonfield, New Jersey. Its registered agent is William A. McDowell, who resides at 313 Briarwood Avenue, Haddonfield, New Jersey. The President of Regency Builders, Inc. is Jack Scolnick and the Secretary is Ellis Myers. The Directors of the Corporation are also Mr. Scolnick and Mr. Myers. They list their addresses as respectively, 1844 Strahle Street, Philadelphia, Pennsylvania, and 1846 Strahle Street, Philadelphia, Pennsylvania.

Four States Enterprises, Inc. is a New Jersey Corporation incorporated by

Mildred Brown, James G. Brown and Martin Sirott. Its principal office is located at 716 Federal Street, Camden, New Jersey, and its registered agent is J. Gilbert Brown of 716 Federal Street, Camden, New Jersey. The purpose of incorporation was home repairs and remodeling.

The Strahle Construction Corporation is a Pennsylvania corporation incorporated to carry on general construction business. Its registered office is 1326 Disston Street, Philadelphia, Pennsylvania. The first Directors were E. Myers of 2811 N. Kensington Avenue, Philadelphia, Pennsylvania, J. Scolnick of 2811 N. Kensington Avenue, Philadelphia, Pennsylvania, and H. Secoda of 1326 Disston Street, Philadelphia, Pennsylvania. The incorporators were J. G. Brown of 1326 Disston Street, Philadelphia, Pennsylvania, Mildred Brown of 1326 Disston Street, Philadelphia, Pennsylvania, and Dora Seave of 1243 Englewood Street, Philadelphia, Pennsylvania.

Now comes a twist. Four State Enterprises, Inc. is a Pennsylvania corporation incorporated to repair and remodel houses. Its registered office is at 1326 Disston Street, Philadelphia, Pennsylvania. The first Directors were Jack Scolnick of 1844 Strahle Street, Philadelphia, Pennsylvania, Ellis Myers of 1844 Strahle Street, Philadelphia, Pennsylvania, and M. Scolnick of 1844 Strahle Street, Philadelphia, Pennsylvania. The incorporators were Mildred Brown of 1326 Disston Street, Philadelphia, Pennsylvania, Loretta Muszynski of 4476 Richmond Street, Philadelphia, Pennsylvania, and Herman Secoda of 2735 East Madison Street, Philadelphia, Pennsylvania.

Some time prior to November 12, 1967, the plaintiff received in the mail an advertising circular which stated in part:

Rural Route, Star Route, Post Office Box Holder, Local, Special Bonus, limited time only! Just for you! New fun popcorn popper. Three quart model. It's electric—with big three quart capacity. Heat resistant glass cover. Pan lifts off base—for easy serving and cleaning. Nonskid table legs. Plug in any 110–120 volt outlet for convenience. Great for those "at home evenings" with the family. Look inside for complete details!

Aluminum Roofing. Roofing by Four States. Beauty and extra savings for your home. This price includes labor and roofing for any size home—up to 800 square feet. No more leaky roofs and ruined interiors. The improved modern appearance of an aluminum roof. Your home is cooler in summer and warmer in winter. Many months to pay. Low monthly payments. Payment nothing for months after installation. $299.00 installation included.

Aluminum Patti-o-port. Get quality at lowest prices! Completely installed! Includes all labor and materials. Custom made, always cool, Rust proof. Adds value to your home. Play area for children. Any size up to giant eight feet x 20 feet. Like adding another room to your home for a carport for your car's protection. Your family will enjoy this sun and rain shelter . . . Keeps damaging sun rays, snow or hail off your car . . . and now about the convenience of quick cover when a shower wants to spoil a family barbeque? Save hundreds of dollars or more over similar aluminum covers. Many months to pay. Low monthly payments. Pay nothing for months after installation. $99.00 no down payment.

Free bonus. Call now! Out of town call collect. Pennsylvania (215) 627–6700. Allentown–434–3453. New Jersey (609)–966–2468. Delaware (302)–OL–2–8728. If you act promptly we will include this bonus with a purchase of our aluminum siding special. New, fun, popcorn popper.

Stone and aluminum siding sale. Regular $499.00 value. Now $299.00 on Four states special offer. Completely installed! Includes all labor

and materials. Completely installed. Get quality at lowest prices. Stop unnecessary home problems. Wood board splitting, high fuel costs chilly drafts, uncomfortable living due to poor insulation. Enjoy everlasting home beauty. Comfortable living and savings. Now your home can be made into a truly modern home.

700 square feet of aluminum siding, plus 300 square feet of genuine quarry ribbon stone. Completely installed. Includes labor and material for any average size home up to 1,000 square feet. Stop unnecessary problems. Wood board splitting, high fuel costs, chilly drafts, uncomfortable living due to poor insulation. Enjoy everlasting home beauty, comfortable living and savings. Now your home can be made into a truly modern home. This price includes labor and materials for any average size home up to 1,000 square feet. Budget terms available. Low monthly payments. Pay nothing for months after installation. No money down.

Enclosed with the circular was a business reply card addressed to Four States Enterprises, Inc., P. O. Box 441, Feasterville, Pennsylvania 19048.

On November 12, 1967, the plaintiff executed a contract with Four States Enterprises, Inc. for the construction of a frame garage and pink wood tone aluminum siding. The cash price was $2,900.00. The unpaid cash balance was $2,900.00. The life insurance tacked on to the unpaid balance was $258.70. That left a "principal balance" owing and payable to Four States Enterprises, Inc. of $3,158.70.

Four States Enterprises, Inc. tacked on what was referred to as "time price differential" i.e. interest, of $1,768.74, for a total purchase price, including life insurance and interest, of $4,927.44. In other words, the frame garage cost the plaintiff $2,900.00, and the interest, carrying charges and life insurance cost the plaintifff $2,027.44.

One of the "other conditions of contract" was "this agreement may be assigned without notice to buyer and when so assigned, shall be free from any defense, counterclaim or cross-complaint."

The President of Four States Enterprises, Inc., Jack Scolnick, assigned the plaintiffs' contract to General Electric Credit Corporation. The plaintiffs were notified of the assignment.

On December 11, 1967, the plaintiff applied to the Building Inspector of Thornbury Township, Delaware County, Pennsylvania, for a building permit to construct a two car garage and breezeway. On December 12, 1967, the permit was issued. On December 20, 1967, the plaintiffs executed a "completion certificate." The certificate read in pertinent part:

> To Four States Enterprises, Inc. (Dealer) and the assignees of the contract and/or note covering the property improvement transaction applied for in our purchaser's credit application dated 11–12–67.

> I hereby certify that all articles and materials have been furnished and installed and the work satisfactorily completed on premises indicated in our Purchaser's Credit Application.

> I certify that I have not been given or promised a cash payment or rebate nor has it been represented to me that I will receive a cash bonus or commission on future sales as an inducement for the consummation of this transaction. I understand that the selection of the dealer and the acceptance of the materials used and the work performed is my responsibility and that the assignees of the contract and/or note do not guarantee the material or workmanship or inspect the work performed.

> NOTICE TO PURCHASER. DO NOT SIGN *this certificate until you are satisfied that the dealer has carried out his obligation to you and that the work or the materials have been satisfactorily completed or delivered.*

The plaintiff, Ervin E. Johnson, signed the completion certificate on December 20, 1967.

On January 10, 1968, the plaintiffs received a "Notice of Assignment," which read in pertinent part:

This is to notify you that the undersigned is the assignee of the contract made between you and the following contractor: Four State Enterprises, Inc., 401 Noble Street, Philadelphia, Pa. 19123.

The "undersigned" was General Electric Credit Corp. of 19 East 47th Street, New York City, New York. The Court notes that General Electric Credit Corporation indicated that they received their assignment from Four State Enterprises, Inc., while the contract above mentioned was with Four States Enterprises, Inc.

On May 14, 1969, the plaintiffs were notified by the law firm of Richard, Brian & DiSanti that judgment had been entered against them in the Court of Common Pleas of Delaware County on the Court Term and Number of 530 of 1968, Court of Common Pleas, Delaware County, General Electric Credit Corp. to the use of Four State Enterprises, Inc. v. Ervin and Catherine Johnson. The plaintiffs were further advised that their home would be sold at Sheriff's Sale on June 13, 1969. A carbon copy of the letter was sent to Jack Scolnick.

Whereupon, the plaintiff wrote to the Department of Banking & Insurance of the State of New Jersey, and they in turn wrote to the General Electric Credit Corporation at their offices located at 99 Kinderkamack Road, Westwood, New Jersey. General Electric Credit Corporation wrote back and said in pertinent part:

Per your request I have enclosed a memorandum from our Stamford, Connecticut Accounting Center which briefly outlines procedure that is utilized when home modernization transactions are purchased by the Westwood branch with customer's credit life insurance.

Only one copy of the certificate of insurance is made out and forwarded to the customer with their coupon books. Whether or not a certificate of insurance is issued depends upon whether or not it is shown as a charge to the customer in the respective security agreements. For your information I have enclosed a copy of our security agreement with Mr. Johnson, and as you may note, is duly signed and shows an insurance fee for life insurance of $258.70. I hope this is what you requested concerning this situation and I hope it helps to clarify matters.

I think I have advised you in the past, but I will reiterate at this time, that this account, due to the discrepancies, in the work, customer's complaint as to what should have been and should not have been done, etc., was repurchased by the dealer in January of this year.

All interest in this transaction have been reassigned to Four States Enterprises and any action that they are taking at this time is in their own behalf.

On June 16, 1969, Strahle Construction Corporation filed a certificate of amendment to its corporate charter to change its name to Four States Builders, Inc. Four States Builders, Inc. listed its registered office as 1326 Disston Street, Philadelphia. Its President was Jack Scolnick, and its Vice President and was Ellis Myers.

The plaintiff wrote to the General Electric Credit Corporation, and on January 16, 1970, received the following communication from their Legal Operations Officer, return address 1500 East Putnam Avenue, Old Greenwich, Conn. The letter reads:

I call to your attention my letter of December 12, 1969, where I hoped to

make it clear to you that it would not be proper for anyone in this company to communicate with you and vice-versa, except through our representative attorneys.

Apparently, you have chosen to ignore the message of my letter since you have written on January 2, 1970 to me, to Mr. N. H. Smeltzer and Mr. H. B. Shuttleworth. Further, Mr. Smeltzer received (with postage due of 12 cents) an envelope with your return address posted on January 6, 1970, containing a letter addressed to you from the State of New Jersey, Department of Banking and Insurance along with copies of various documents and correspondence. Since no cover letter was enclosed with the latter piece of mail, we cannot know your purpose in sending it to Mr. Smeltzer; however, whatever the purpose, since we are not at all interested in the contents of said envelope, I am returning them with this letter.

We fail to see your reasons for continuing to write to this company and to others about us in connection with your "problem" with Four-State Enterprises, Inc. If you believe that we have some interest in that corporation, let me assure you that we do not nor do we any longer have any interest in the contract you entered into with Four-State Enterprises in connection with a home improvement transaction.

If you are being sued by anyone in connection with that transaction, that suit is not on our behalf nor do we have any interest in it. We do not wish to be drawn into a controversy that is not our concern. It is true that some questions with regard to those aspects of the transaction that relate to the assignment of your contract to us may arise in that litigation. But, we are not a principal in that transaction and our connection with it is merely incidental.

As to the question of who we dealt with in connection with that transaction, I have checked with our field people and have found that only one entity is involved, namely, Four-State Enterprises, Inc. Further, I have learned that that corporation has used the name "Four-State Builders" as a trade style; and that for those of our people who have had business contacts with them, the two names are used interchangeably.

Again, I would urge you to consider and follow the message of my letter of December 12, 1969.

On January 15, 1968, General Electric Credit Corporation began suit against the plaintiffs, and on that date took a judgment on a single bill in the amount of $4,927.44. The judgment was marked to the use of Four State Enterprises, Inc. On May 28, 1969, the Petition to open the judgment was filed. The Judgment was opened on June 18, 1969 by the Court of Common Pleas of Delaware County, Pennsylvania. The case went to a trial before a jury on March 15, 1971, and on March 17, 1971, the jury returned a verdict in favor of the plaintiff therein, Four State Enterprises, Inc., and against the defendants therein, Ervin E. Johnson and Catherine L. Johnson, in the amount of $2,350.00.

The complaint filed in the Court of Common Pleas of Delaware County alleged that on or about November 12, 1967, the Johnsons executed written agreement for the application of aluminum siding to the walls of their dwelling at 98 Locksley Road, Glen Mills, Pennsylvania, and the construction of a 20′ x 24′ garage to be erected by Four State Enterprises, Inc. on the Johnsons' premises. This Court notes the convenient interchangeability of Four States Enterprises, Inc. and Four State Enterprises, Inc. This Court notes that the complaint filed in Delaware County was captioned General Electric Credit Corporation to the use of Four State Enterprises, Inc. Furthermore, this Court notes that the complaint therein stated that the plaintiff, Four State Enterprises, Inc., entered into a contract with the

Johnsons, when in fact, and in reality, the name of the construction corporation was Four States Enterprises, Inc. As has been noted above in this memorandum, Four States Enterprises, Inc. is a New Jersey Corporation and Four State Enterprises, Inc. is a Pennsylvania Corporation. Four States was incorporated by Mildred Brown, James G. Brown and Martin Sirott. Four State was incorporated by Mildred Brown, Loretta Muszynski, and Herman Secoda. The last known directors of Four States were J. Scolnick, E. Myers and M. Scolnick. The first directors of Four State were Jack Scolnick, Ellis Myers, and M. Scolnick.

■■ The Court is not impressed by this slight of hand by either Four States Enterprises, Inc. or Four State Enterprises, Inc., or for that matter, Messrs. Scolnick and Myers. This Court is satisfied that the plaintiffs in this action, Ervin E. Johnson and Catherine L. Johnson have made proper service upon the registered agent of Four States Enterprises, Inc., a New Jersey Corporation. The Court is further satisfied that Mr. and Mrs. Johnson are residents and domiciliaries of the Commonwealth of Pennsylvania. We are also satisfied that Mr. Scolnick and Mr. Myers are residents and domiciliaries of the Commonwealth of Pennsylvania. The Court will dismiss the above captioned action as to defendants Scolnick and Myers for lack of diversity. The Motion to Dismiss for lack of diversity as to Four States Enterprises, Inc. is denied.

■ The defendants have also raised the issue of the lack of the statutory $10,000 minimum for federal jurisdiction in diversity cases. On the basis of the breach of the construction contract, damages to plaintiff could rise no higher than $4,927.44. However, the plaintiff, in his second amended complaint, alleged that "as a result of defendant's conduct, plaintiff . . . has incurred injury to his financial credit rating . . . ." Moreover, plaintiffs allege that they have paid the $4,927.44 to the assignee of the above captioned defendant; and furthermore, plaintiffs allege they have also been forced to complete the construction of the garage out of their own pocket, and that none of the $4,927.44 went towards the completion of this garage. The original price paid, i.e. the $4,927.44, plus the out-of-pocket expense paid out by the plaintiffs in order to complete the garage, may, in and of itself, exceed the statutory minimum of $10,000.

■ As to the allegation of injury to plaintiffs' financial credit rating, the Court is aware that the present state of the law in Pennsylvania as to loss of credit as an element of damage is held to be that loss of credit, standing alone, is not proof of damage, unless the loss of credit connects itself with some tangible pecuniary loss of which the loss of credit was the cause. Eckel v. Murphey, 15 Pa. 488, 495 (1850); Smith v. Western Union Telegraph Company, 150 Pa. 561, 564, 24 A. 1049 (1892); Altoona Clay Products, Inc. v. Dun & Bradstreet, Inc., 286 F.Supp. 899, 904 (W.D.Pa. 1968).

As to the issue of service upon a dissolved corporation, New Jersey Statutes Annotated 14A:12–9(2)(e) and (f) states:

(2) SUBJECT to the provisions of 14A:12–9(1), and except as otherwise provided by court order, the corporation, its officers, directors and shareholders shall continue to function in the same manner as if dissolution had not occurred. In particular, and without limiting the generality of the foregoing,

(e) the corporation may sue and be sued in its corporate name and process may issue by and against the corporation in the same manner as if dissolution had not occurred;

(f) no action brought against any corporation prior to its dissolution shall abate by reason of such dissolution.

Moreover, under New Jersey Law, a corporation after dissolution may be sued for a cause of action in tort arising before such dissolution, and process may be served on the registered agent of the corporation. Hould v. John P. Squire & Co., 81 N.J.L. 103, 79 A. 282 (1911). This Court sees no reason why an action for breach of contract should abate because of dissolution. A case perhaps closer to the point was decided by Judge Hannum of this Court, Dyotherm Corporation v. Turbo Machine Company, 48 F.R.D. 380 (E.D.Pa.1969), appeal dismissed 434 F.2d 65, wherein the fact that the plaintiff corporation's charter had been voided by the State of New Jersey for nonpayment of state taxes more than six months before the complaint was filed, did not divest this Court of jurisdiction.

We hold that the service upon the registered agent of Four States Enterprises, Inc. on July 12, 1971 was proper and valid service.

The defendant has also alleged as a ground for dismissing the complaint, that the Delaware County litigation was res judicata as to the claim of the plaintiffs herein. First of all, the litigation in Delaware County was a judgment on a note and was between General Electric Credit Corporation to the use of Four State Enterprises, Inc. and the plaintiffs herein, and not between Four States Enterprises, Inc. and the plaintiffs herein. We find that the doctrine of res judicata is not applicable to the case at hand.

### ORDER

An now, to wit, this 13th day of December, 1972, it is ordered that the Motion to Dismiss as to Defendant, Four States Enterprises, Inc., is denied, and the Motion to Dismiss as to Defendants, Jack Scolnick and Ellis Myers, is granted.

And it is so ordered.