628 P.2d 979

**Frank NEIS and Jane Doe Neis, Plaintiffs-Appellees,**

v.

**HEINSOHN/PHOENIX, INC., an Arizona Corporation, Defendant-Appellant.**

**Nos. 1 CA–CIV 4842, 1 CA–CIV 4873.**

Court of Appeals of Arizona, Division 1, Department A.

May 12, 1981.

Shultz & Worischeck, P. A. by Joseph H. Worischeck, Phoenix, for plaintiffs-appellees.

Fennemore, Craig, von Ammon & Udall by Timothy Berg, George T. Cole, Phoenix, for defendant-appellant.

## OPINION

OGG, Acting Presiding Judge.

This appeal is from the order denying a motion to vacate and set aside a default judgment. Several issues have been raised on appeal. We address, however, only the following, which we consider dispositive of the matter: (1) Whether service of process on the designated statutory agent for a dissolved corporation brought the corporation within the jurisdiction of the trial court; and (2) whether the trial court abused its discretion in denying a motion to continue the default hearing.

The pertinent facts, viewed in a light favorable to upholding the judgment, are as follows. On November 9, 1978, Frank Neis filed a complaint in Maricopa County Superior Court alleging that his former employer, appellant Heinsohn/Phoenix, Inc. (Heinsohn), had failed to pay commissions to which he was entitled. Plaintiff sought to recover treble the amount of these alleged commissions pursuant to A.R.S. § 23–355.

The summons and complaint were served on James S. Ulery, statutory agent for Heinsohn according to records of the Arizona Corporation Commission. Mr. Ulery forwarded the complaint to Edward Mills, Heinsohn's attorney in San Francisco. Mr. Mills contacted Joseph H. Worischeck, plaintiff's counsel, on December 11, 1978 at which time he requested and was granted an extension of time to answer the complaint. Mr. Mills later received a letter dated January 2, 1979 from Mr. Worischeck demanding an answer no later than January 16, 1979. The letter was overlooked and no responsive pleadings were filed. Default was entered on January 30, 1979.

Upon learning of the default from Mr. Ulery on March 7, 1979, Heinsohn immediately secured representation of local counsel in Phoenix. At the commencement of the default hearing before the court commissioner on March 9, 1979, defendant's counsel made oral motions to set aside the default and to continue the hearing. These motions were denied.[1]

Judgment was entered finding Heinsohn indebted to plaintiff for $6,611.54 and awarding three times that amount, $19,834.62, together with interest and costs. On March 13, 1979 Heinsohn filed a motion to vacate and set aside the default judgment. The trial judge entered a memorandum opinion and order denying the motion on April 9, 1979.

■ Heinsohn first alleges that the trial court erred in concluding that it had jurisdiction to enter default judgment. We disagree.

The corporate charter of Heinsohn/Phoenix, Inc. was revoked by the Arizona Corporation Commission on May 1, 1978 on its own initiative for failure to file an annual report. The Commission records, however, continued to identify James Ulery as the corporation's statutory agent in November, 1978 when plaintiffs served him with a summons and complaint.

Heinsohn argues that because it was no longer a legal entity in November 1978, any agency relationship between the corporation and Mr. Ulery had automatically terminated absent a statutory provision continuing this relationship. We agree with this general proposition. Nevertheless, unlike appellant, we conclude that there are statutory provisions that continued this relationship for purposes of receipt of service of process. We reach this conclusion based upon relevant provisions of Arizona's Corporation Act, A.R.S. §§ 10–002 to 10–009 and 10–012 to 10–052. The following statutes control the appointment and maintenance of statutory agents and service of process upon corporations and provide in pertinent part:

A.R.S. § 10–012. Known place of business and statutory agent

Each corporation doing business in this state shall have and continuously maintain in this state:

2. A statutory agent. . . .

A.R.S. § 10–013. Change of known place of business or statutory agent

A. A corporation may change its known place of business or its statutory agent, or both, upon filing in the office of the commission a statement setting forth:

\*    \*    \*    \*    \*    \*

5. If its statutory agent or his address is to be changed, the name and address of its successor, statutory agent or the new address.

\*    \*    \*    \*    \*    \*

C. Any statutory agent of a corporation may resign as such agent upon filing a written notice thereof, . . .

A.R.S. § 10–014. Service of process on corporation

A. The statutory agent so appointed by a corporation shall be an agent of such corporation upon whom any process, notice or demand required or permitted by law to be served upon the corporation may be served, and which, when so served, shall be lawful personal service on the corporation.

B. . . . Whenever a corporation shall fail to appoint or maintain a statutory agent at the address shown on the records of the commission, the commission shall be an agent of such corporation upon whom any such process, notice or demand may be served. Service on the commission of any such process, notice or demand shall be made by delivering to and leaving with the commission duplicate copies of such process, notice or demand. When so served the commission shall immediately cause one of the copies thereof to be forwarded by mail, ad-

<hr>

1. The record contains no transcript of the default hearing. The parties dispute the manner in which these motions were handled. However, we do not find this significant for purposes of this appeal.

dressed to the corporation at its last known place of business. . . .[2]

Arizona's corporation statutes are based in large part upon the Model Business Corporations Act.[3] We therefore find official comments to this Act useful in interpreting the Arizona statutes. A.R.S. §§ 10–012, 10–013 and 10–014 are the counterparts of §§ 12, 13 and 14 of the Model Act.[4] The comment to § 14 reflects the intent of these sections and provides in part:

> In line with the theory underlying sections 12 and 13 of the Model Act that there should be no time when a domestic corporation cannot readily be found in the state of incorporation, section 14 establishes the registered agent as an agent upon whom any process, notice or demand required or permitted by law may be served upon the corporation.
>
> The second paragraph of section 14, providing for alternative service on the secretary of state, insures that the failure of a corporation to maintain a registered agent at a registered office as required by sections 12 and 13 will not be permitted to defeat the intention of those sections.

These comments support the conclusion that by permitting service upon the Corporation Commission, the legislature intended to expand rather than restrict the means for serving a corporation. Service on the commission is not preferred service but is allowed *only* where no statutory agent is maintained. Even where service is made on the commission, the commission is obligated

to forward process to the last known corporate address. Thus, A.R.S. §§ 10–012 to 10–014 serve a dual function of facilitating efforts of aggrieved parties to commence legal proceedings against corporations and providing adequate notice to corporate defendants. Therefore, if a statutory agent is maintained, substitute service on the commission is improper because it is less likely to constitute notice to the corporation.

The issue in the instant case, however, is whether appellant maintained a statutory agent after revocation of its certificate. Although revocation of appellant's certificate of incorporation dissolved the corporation, *see* A.R.S. § 10–095 D., it continues to exist for the limited purposes set forth in A.R.S. § 10–105 which provides:

> The dissolution of a corporation . . . by order of the commission revoking the certificate of incorporation under the provisions of § 10–095 . . . shall not take away or impair any remedy available to or against such corporation, its directors, officers or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution. Any such action or proceeding by or against the corporation may be prosecuted or defended by the corporation in its corporate name. The shareholders, directors and officers shall have power to take such corporate or other action as shall be appropriate to protect such remedy, right or claim . . . .

We believe it is reasonable to assume that where the legislature specifically extended corporate existence to defend against law-

---

**2.** Additionally, Arizona Rules of Civil Procedure, rule 4(d) in part provides that service shall be made:

> 6. Upon a domestic or foreign corporation . . . by delivering a copy of the summons and of the complaint to . . . an officer, a managing or general agent, or to any other authorized by appointment or by law to receive service of process. . . .

**3.** The State Bar of Arizona prepared a comprehensive revision of Arizona's corporation statutes modeled upon the Model Business Corporations Act which was introduced in the legislature in 1973. *See* S.B. 1097, 31st Ariz.Leg., First Reg.Sess. (1973). The State Bar subsequently introduced the same bill with modifica-

tions as H.B. 2315, 32nd Ariz.Leg., First Reg. Sess. (1975). This bill was enacted into law by 1975 Ariz.Sess.Laws, Ch. 69. Reference to H.B. 2315 as the Model Business Corporations Act is contained in the Journal of the Senate, 32nd Ariz.Leg., First Reg.Sess.1975, p. 416, 496, 589, 620 and 1190.

A general discussion of Arizona's adoption of a modified version of the Model Business Corporations Act is contained in Cocanower and Hay, The New Arizona Business Corporation Act, 17 Ariz.L.R. 557 (1975).

**4.** Arizona substitutes "statutory agent" for "registered agent" and "corporation commission" for "secretary of state."

suits after dissolution, it must have anticipated that there would be someone upon whom pleadings could be served, other than by substituted service.[5]

While we have found no Arizona case law on this precise issue, appellant's argument that dissolution of the corporation terminates the authority of the statutory agent was considered and rejected by the Illinois Supreme Court in *People ex rel. Carpentier v. Windy City Motor Service, Inc.*, 22 Ill.2d 209, 174 N.E.2d 839 (1961). The Illinois Supreme Court, interpreting an Illinois statute similar to A.R.S. § 10–105 [6], distinguished between an agency in fact and the appointment of a corporate "registered agent" for the service of process and concluded that the authority of the "registered agent" continued after dissolution unless the agency was terminated as provided by statute. *Accord, Westphall v. Trailers, Campers, Campgrounds, Inc.*, 76 Ill.App.3d 205, 30 Ill.Dec. 86, 392 N.E.2d 741 (1979).

The Arizona statutes likewise establish a scheme for service upon corporations and create a legal relationship between a corporation and its statutory agent that differs from the common law relationship of principal-agent. This relationship does not exist simply because of a contractual agreement between the corporation and its agent.[7] Rather, compliance with applicable statutes governs its creation and termination. The corporation and its agent are obligated to inform the public of any change in this relationship by public recording of such change as provided in A.R.S. §·10–013. In this sense, there is a relationship involving three parties, *i. e.*, the corporation, the agent and the public. The public has a right to rely upon Corporation Commission records indicating the existence of a statutory agent. If the corporation desires to terminate the agency, it must do so by the positive act of compliance with A.R.S. § 10–013. Therefore, we conclude that Heinsohn maintained its statutory agent for purposes of service of process.

We turn now to Heinsohn's contention that the commissioner erred by failing to grant a continuance of the default hearing to enable counsel to prepare a defense on the issue of damages. From the meager record available, it appears Heinsohn's Arizona counsel was retained the day before the default hearing, and that this new counsel orally requested at the hearing on the entry of the default judgment that it be continued for one week. After the motion for a continuance was denied, Heinsohn was unable to present any evidence in its behalf due to lack of preparation time.

■■■ Appellee argues that Heinsohn was not entitled to participate in a hearing since the damage claim is based upon a

---

**5.** In addressing the issue of service of process upon a corporation which had voluntarily dissolved, the Minnesota Supreme Court held that substituted service upon the Secretary of State was not an exclusive method of service and service upon a trustee of the dissolved corporation was proper. *Henderson v. Northwestern Heating Engineers, Inc.*, 274 Minn. 396, 144 N.W.2d 46 (1966).

**6.** The court was interpreting Ill.Rev.Stat. 1959, Ch. 32, par. 157.94 which provides in part:
The dissolution of a corporation . . . shall not take away or impair any remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing, or any liability incurred, prior to such dissolution if action or other proceeding thereon is commenced within two years after the date of such dissolution.

**7.** Although appellant has cited cases holding that persons authorized to receive process prior to dissolution do not retain that authority after corporate dissolution, these cases involve agents whose authority was dependent upon *actual* authority as distinguished from a statutory scheme akin to A.R.S. §§ 10–012 through 10–014. *See, e. g., International Pulp Equipment Co. v. St. Regis Kraft Co.*, 54 F.Supp. 745 (D.Del.1944); *Kopio's Inc. v. Bridgeman Creameries, Inc.*, 248 Minn. 348, 79 N.W.2d 921 (1956).

We also note that while not controlling because of Arizona's distinguishable statutory provisions, other jurisdictions have found that persons authorized to receive process prior to dissolution retain that authority following dissolution. *See, e. g., Johnson v. Four States Enterprises, Inc.*, 355 F.Supp. 1312 (E.D.Pa. 1972); *Sisk v. Old Hickory Motor Freight, Inc.*, 222 N.C. 631, 24 S.E.2d 488 (1943); *Hould v. John P. Squire & Co.*, 81 N.J.Law 103, 79 A. 282 (N.J.1911).

contract and is therefore a liquidated claim. This argument was rejected in *Beyerle Sand and Gravel, Inc. v. Martinez*, 118 Ariz. 60, 574 P.2d 853 (App.1977). Further, the complaint seeks recovery pursuant to A.R.S. § 23–355 which permits an award of treble damages when such penalty is deemed justifiable by the trial court. *See Cummings v. Aviation Specialties Trade Corp.*, 120 Ariz. 536, 587 P.2d 255 (App.1978); *Apache East, Inc. v. Wiegand*, 119 Ariz. 308, 580 P.2d 769 (App.1978). Even if we were to view the underlying contract claim as liquidated, the recovery of treble damages requires evidence relative to the existence and reasonableness of a good faith wage dispute. Heinsohn's default cannot be construed as an admission of the appropriateness of a discretionary award pursuant to A.R.S. § 23–355.

This court has on several occasions held that a defaulted defendant has the right to fully participate in a hearing on the damages issue. *See Cook v. Steiner*, 22 Ariz. App. 505, 528 P.2d 1264 (1975); *Dungan v. Superior Court*, 20 Ariz.App. 289, 512 P.2d 52 (1973); *Mayhew v. McDougall*, 16 Ariz. App. 125, 491 P.2d 848 (1971). The reasons for so holding were set forth in *Dungan, supra*:

> Since we are committed to an adversary system of justice, we do not construe [Rule 55(b)] to mean that a "hearing" ipso facto means a one-sided presentation by the party seeking the default judgment. It is well-settled in this jurisdiction that, as to setting aside default judgments, all doubts should be resolved in favor of the trial on the merits. We conceive that the same principle should apply to a hearing under Rule 55 as to the amount of damages. (citations omitted)

20 Ariz.App. at 290, 512 P.2d at 54.

We find the facts of the instant case analogous to the facts in *Dungan*, wherein this court held it an abuse of discretion for the trial court to have refused defendant's motion for a continuance in order to properly present a defense on the issue of damages. Although we believe the trial court properly denied Heinsohn's motion to set aside the default, we believe the court should have vacated the default judgment so that a meaningful hearing could be conducted on the damages issue.

For these reasons we affirm the order of the trial court denying appellant's motion to set aside default but reverse the order denying the motion to vacate the judgment. The trial court is ordered to set aside the default judgment and proceed with a hearing limited to the issue of damages.

EUBANK and RICHARD K. MANGUM, JJ., concur.

NOTE: The Honorable Richard K. Mangum was authorized to participate in this case by the Chief Justice of the Arizona Supreme Court pursuant to Ariz.Const. Art. VI, § 3.